IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 02-cv-02259-PSF-CBS

V-FORMATION, INC.,

      Plaintiff,

v.

BENETTON GROUP SpA; and
ROLLERBLADE, INC.,

      Defendants.

---

## ORDER ON PENDING MOTIONS

---

      This matter comes before the Court on Defendants' Motion for Summary Judgment (Dkt. # 16), filed April 7, 2003 together with a Declaration of Matthew Loftus ("Loftus Declaration") and Exhibits A through H thereto, and on Defendants' Motion for Sanctions (Dkt. # 22), filed May 22, 2003.  Plaintiff filed a combined response to both motions on April 28, 2003 (Dkt. # 21), together with Exhibit 1, an affidavit of Louis Muggeo ("Muggeo Affidavit"), to which are attached Exhibits A through C.  Defendants filed their reply brief on May 13, 2003 (Dkt. # 23).

      Also pending before the Court are Defendants' Motion for Summary Judgment of No Liability (Dkt. # 36), filed November 4, 2003.  Plaintiff filed its Response to the Motion for Summary Judgment of No Liability (Dkt. # 44) on December 30, 2003.  Defendants filed their reply (Dkt. # 48) on January 28, 2004.  On August 10, 2004,

defendants also filed supplements to their Motion for Summary Judgment of No Liability (Dkt. ## 52, 53).  The matter is ripe for determination.

## I.    BACKGROUND

Plaintiff V-Formation, Inc. ("V-Formation") is a New Jersey corporation with a principal place of business in Iselin, New Jersey.  V-Formation also conducts business in Colorado Springs, Colorado (Amended Complaint at ¶ 1).  Defendant Benetton Group SpA ("Benetton") is an Italian corporation located in Treviso, Italy (Answer to Amended Complaint at ¶ 2).  Defendant Rollerblade, Inc. ("Rollerblade") is alleged to be a Delaware corporation located in Bordentown, New Jersey, doing business in Colorado (Amended Complaint at ¶ 3).  Rollerblade is apparently a predecessor in interest to Benetton Sportsystem USA, Inc., a party to one of the settlement agreements at issue in this case (see Exhibit E to the Loftus Declaration, attached to Summary Judgment Memorandum filed April 7, 2003 at ¶ 1).

From what the parties have provided the Court gleans the following background facts:  In November 2001 Defendants Benetton and Rollerblade (through Benetton Sportsystem USA, Inc.) entered into a settlement agreement with K-2 Corporation ("K-2") to settle two lawsuits among them pertaining to patents for in-line roller skates. The settlement agreement is attached as Exhibit E to the Loftus Declaration.  The settlement agreement describes the two lawsuits as the "Seattle Lawsuit" and the "New Jersey Lawsuit." (Exhibit E at ¶ 3).  According to the settlement agreement, in the "Seattle Lawsuit" K-2 was suing Benetton for alleged infringement of various patents that apparently originated from a patent application filed in July 1993 by Antonin

2

Meibock and John E. Svensson ("Meibock/Svensson application").  In the New Jersey

Lawsuit, Benetton was suing K-2 for infringement of a patent it held that lists Todd Jack

Olsen, Thomas Lee Spaulding and Alan Eugene Doop as the inventors (*id.*).

As part of the settlement agreement, K-2 covenanted, *inter alia*, not to sue

Benetton, or any related entity, for infringement of any patents at issue in the suit, or for

infringement of any patents that claim priority from the Meibock/Svensson application

(Exhibit E at ¶¶ 8, 17).  Benetton, in turn, covenanted, *inter alia*, not to sue K-2, or any

related entity, for infringement of the patent held by Benetton, or for infringement of any

patents that claim a priority from an application filed by Olsen, Spaulding and Doop in

1995 (*Id.* at ¶¶ 11, 12, 19).  Darren J. Jones, a vice-president and general counsel of

K-2, was one of the parties executing the agreement on behalf of K-2 (*id.* at ¶ 2).

Subsequently, in January 2002, Plaintiff V-Formation filed a suit against K-2 in

New York alleging that K-2 infringed patents held by V-Formation known as the Wrike

patents (Exhibit B to Muggeo Affidavit, attached to Plaintiff's Response).  On or about

August 23, 2002, V-Formation and K-2 entered into an understanding to settle the

lawsuit between them and entered into a written "Outline of settlement terms" signed

by Darren Jones on behalf of K-2 (*see* Muggeo Affidavit and Exhibit A thereto).  The

settlement agreement was reduced to writing by December and signed by Darren

Jones on behalf of K-2 on December 10, 2002 (Exhibit B to Muggeo Affidavit at 4).

Pursuant to that agreement, K-2 represented that it owned "all right, title and interest

in and to" certain patents known as the Meibock patents, including U.S. Patent Nos.

5,452,907 and 5,549,310 ("the '907 and '310 patents").  (*Id.* at 1).  These two patents

were apparently derived from the Meibock/Svensson application referenced in the K-2/Benetton settlement agreement.  Pursuant to the settlement agreement, K-2 agreed to assign to V-Formation "the entire right, title and interest in and to the Meibock patents" for specified periods of time.  (*Id.* at 2).  A form of Assignment and Reversion Agreement (Patent Assignment) was attached to the settlement agreement (Exhibit C to Muggeo Affidavit).  The Patent Assignment provided that the assignment to V-Formation included the right to sue for past infringement (*id.* at 1).  The Patent Assignment was signed by Darren Jones for K-2 on December 10, 2004 (*Id.* at 3).

On December 4, 2002, before Jones had even signed the settlement agreement and the Patent Assignment, V-Formation filed its original complaint in this case alleging that Benetton was infringing the '310 patent (Complaint at ¶ 9).  Plaintiff subsequently filed an Amended Complaint on February 11, 2003, alleging infringement by Benetton of the '907 patent as well.

By letter dated February 3, 2003, counsel for Benetton advised counsel for V-Formation that on account of its settlement agreement with K-2, Benetton could not be liable for infringement of the '310 patent, and requested dismissal of the original complaint in this lawsuit (Exhibit A to Motion for Sanctions).  By letter dated February 7, 2003, counsel for V-Formation replied that the lawsuit would not be dismissed unless Benetton could provide evidence that the settlement agreement was recorded in the U.S. Patent and Trademark Office ("USPTO"), pursuant to 35 U.S.C. § 261, before the August 23, 2002 agreement between K-2 and V-Formation described above, as V-Formation was not "ever informed" of the settlement agreement.  He also advised

that the Amended Complaint regarding the '907 patent had been filed (*see* Exhibit B to Motion for Sanctions).

By letter dated February 18, 2003, counsel for Benetton reiterated his assertion that the K-2 settlement with Benetton insulated it from claims regarding both patents, and asserted that recordation of the settlement agreement pursuant to 35 U.S.C. § 261 was not required, citing case law, as the covenant not to sue from K-2 did not constitute a transfer of ownership interests in a patent (Exhibit D to Motion for Sanctions).  By reply letter, also dated February 18, 2003, counsel for V-Formation, also citing case law, argued that recordation was required under the statute, which expressly requires recordation of a patent "assignment, grant or conveyance" for it not to be void as against a subsequent purchaser or mortgagee for valuable consideration. V-Formation's counsel urged that "[t]here is a very legitimate argument that a covenant not to sue is a *grant* because a covenant not to sue is equivalent to a license" and that "a license is a *grant* and a covenant not to sue is nothing more than a 'bare' license, but nonetheless, a license and therefore a *grant*."  Exhibit C to Motion for Sanctions (emphasis in original).

The parties, needless to state, did not resolve their differences of opinion and so the instant motion for summary judgment followed.

## II.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S RESPONSE

Defendants argue that they are entitled to summary judgment on plaintiff's infringement claims because they are "fully licensed" as a result of their settlement

agreement with K-2, to practice the two patents that are at issue in this case and such license provides them with a complete defense (Defendants' S.J. Mem. at 4). Defendants point out that the settlement agreement with K-2, and the covenants not to sue contained therein, not only bound K-2 and Benetton but were also expressly made on behalf of the parties' "successors, assigns, [and] representatives," among others. (*Id.*, Exhibit E to Loftus Declaration at ¶ 2).  Defendants further argue that there was no requirement for them to record the K-2 settlement agreement under 35 U.S.C. § 261 as the statute concerns only "transfers of ownership interests" in patents and does not apply to a "mere license."  (Defendants' S.J. Mem. at 6).

Plaintiff argues that the covenant not to sue contained in the settlement agreement is not binding upon it because paragraph 22 of the settlement agreement provided, in part, as follows: "K-2's and Benetton's covenants not to sue are not assignable or otherwise transferable."  (Exhibit E to Loftus Declaration at ¶ 22).  The paragraph was amended by an addendum dated December 6 and 9, 2002 to read: "K-2's and Benetton's covenants not to sue are not assignable or otherwise transferable, other than as part of the transfer of the entire business to which the covenants relate." (Addendum To Settlement Agreement, Exhibit E to Loftus Declaration at page 6).  Plaintiff asserts that this provision precluded a transfer to it of K-2's covenant not to sue Benetton for patent infringement and therefore K-2's covenant not to sue does not bind V-Formation (Plaintiff's Response at 5-7).  Plaintiff also argues that even if the covenant not to sue were otherwise binding upon it, the failure of Benetton to record the covenant not to sue precludes its use as a defense in

6

this suit.  V-Formation asserts that it did not have notice of the settlement agreement between K-2 and Benetton as of August 2002 when it agreed to take an assignment of the '310 and '907 patents, and therefore is a bona fide purchaser without notice of the K-2 covenant not to sue (Plaintiff's Response at 7-12).

## III.    STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether a trial is necessary.  *White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir. 1995).  In other words, there "must be evidence on which the jury could reasonably find for the plaintiff."  *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995), *cert. denied*, 516 U.S. 1160 (1996).  A court grants summary judgment for the moving party only where there is no genuine issue as to any material fact in the pleadings, depositions, answers to interrogatories, admissions, and affidavits.  F.R.Civ.P. 56(c).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works of Colorado, Inc. v. City and County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994), *cert. denied,* 514 U.S. 1004 (1995), citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  When applying this standard, a court must view the factual record in the light most favorable to the nonmovant.  *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).

The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial."  F.R.Civ.P. 56(e);  *Celotex Corp.,* 477 U.S. at 324.  "[S]ummary judgment will not lie if

the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  But, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will preclude the entry of summary judgment." *Id.*

## IV.    ANALYSIS

Plaintiff here does not contend that factual issues preclude summary judgment, stating that the settlement agreement between K-2 and Benetton "speaks for itself," that its interpretation is a matter of law, and that the legal obligations imposed on the parties is a question for the Court to resolve (Plaintiff's Response at 2-3).  Defendants agree (Defendants' Reply Brief at 2).  Moreover, the parties in this case agree that the settlement agreement between K-2 and Benetton, notwithstanding its somewhat opaque language, does include the same two Meibock patents, the '310 and '907 patents, that are at issue in this case (Plaintiff's Response at 4, ¶ 21).  Finally, defendants apparently do not take issue with plaintiff's factual assertion that it had no knowledge of the settlement agreement between K-2 and Benetton at the time it took assignment of the Meibock patents from K-2.

### A.    Interpretation of the Settlement Agreement and Covenants Not to Sue

Interpreting the settlement agreement between K-2 and Benetton as "speaking for itself,"  the Court finds that its plain meaning, as well as its intent based on the circumstances under which it was entered into, was to provide Benetton with protection

against suit for patent infringement by K-2 for conduct relating to certain patents, including the '310 and '907 patents.  As Benetton correctly points out, the agreement provides that it is binding, including the covenants not to sue, on K-2's "successors, assigns, [and] representatives" with respect to those patents.  It is undisputed that V-Formation is an assignee of the two patents from K-2.   Moreover, V-Formation itself acknowledges that "reading the original Agreement as a whole, the parties intended the Agreement to be binding on the parties' successors, predecessors and assigns . . . ." (Plaintiff's Response at 6).  It argues, nonetheless, that paragraph 22 precludes assignment of the covenants not to sue.

The Court does not find that paragraph 22 of the settlement agreement, either in its original language or as amended, prohibits Benetton from asserting the protections of the covenant not to sue in this lawsuit.  Benetton is not suggesting, nor is there any evidence in the record indicating that the covenant not to sue was "assigned" to V-Formation, an act that might arguably violate the plain language of paragraph 22. Benetton is not asserting that an "assignment" of the covenant not to sue to V-Formation precludes this lawsuit.

What was assigned to V-Formation was all of K-2's "right, title, and interest in and to" the patents (Exhibit C to Muggeo Affidavit at 1).  V-Formation's claims in this case depend on its receipt of that assignment, as it alleges in paragraph 7 of both its Complaint and Amended Complaint.  At the time of the assignment, that right, title and interest did **not** include a right to sue Benetton for patent infringement, as that right had been waived by virtue of the prior settlement agreement.

9

It is true, as plaintiff argues, that K-2 represented in December 2002 that it owned "all right, title and interest in and to" the '907 and '310 patents (Exhibit B to Muggeo Affidavit at 1).  It may also be true that this representation was not accurate, as K-2 had previously given Benetton the covenant not to sue on such patents in November 2001.[1]  However, the truth or falsity of K-2's representations to V-Formation cannot affect what property interest K-2 had in the patents, or what it transferred to V-Formation.

Moreover, the Court does not agree with V-Formation's suggestion that the provisions of paragraph 22 of the settlement agreement conflict with the provisions of paragraph 2 which make the agreement binding on successors and assigns.  Rather, this Court understands that the provisions contained in paragraph 22 of the settlement agreement mean that the mutual "rights" which each party received under the covenant not to sue, namely the right to be free from patent infringement claims relating to the respective patents, may not be assigned or transferred to other parties unless they are assigned or transferred as part of transfer of the entire business to which the covenants

---

[1] Indeed, the Court notes that on March 10, 2003, V-Formation filed a lawsuit in this district against K-2 Corporation and Darren Jones (Civil Action No. 03-cv-0412-EWN-CBS). Although that case was transferred to the Western District of Washington in July 2003, and the file is no longer available in the Court Clerk's office, the Court has reviewed the filings in the Western District of Washington case, Civil Action No. 03-2371C.  In that case V-Formation has asserted claims against K-2 and Jones for fraud by concealment, misrepresentation and breach of the agreement between them, including a claim for breach of warranty.  *See* Complaint in that case, Attachment 1 to Declaration of Robert Silverman (Dkt. # 53).

Although the parties to the instant case did not so inform this Court, it has learned as a result of its recent review of the filings in the Western District of Washington case, that K-2's motion for partial summary judgment was denied, and the case stayed pending a ruling in this case on Benetton's Motion for Summary Judgment (Order entered by Judge Coughenour, September 13, 2004).

relate.  In other words, Benetton would not have the right to assign to another party its "right" under the covenant to not be sued for infringing patents '907 or '310, for if that were so Benetton would in effect have an unlimited right to sublicense those patents, which was not the apparent intent of the settlement agreement.  On the other hand, if the "obligation" that arises out of the settlement agreement, namely the obligation to not sue for patent infringement claims relating to the respective patents were not transferable with the patent, it could be rendered meaningless and avoidable by a simple assignment of the patent to another.  Such circumstance would destroy the benefit of the bargain received by each of the parties to the settlement agreement, which could not be the intent of the settlement agreement or the intent of paragraph 22.

Thus, paragraph 22 of the settlement agreement has meaning, but not he meaning ascribed to it by V-Formation.  The Court finds that the provisions of paragraph 22 do not preclude Benetton from asserting the covenant not to sue as against V-Formation.

### B.   Whether the Non-recordation of the Covenant Not to Sue Precludes Benetton from Asserting it against V-Formation

Title 35 U.S.C. § 261 provides, in pertinent part:

> An assignment, grant or conveyance [of a patent interest] shall be void as against any subsequent purchaser or mortgagee for a valuable consideration, without notice, unless it is recorded in the Patent and Trademark Office within three months from its date or prior to the date of such subsequent purchase or mortgage.

At least for purposes of this motion for summary judgment, it appears that Benetton does not dispute that V-Formation is a subsequent purchaser or assignee of

11

the '907 and '310 patents, and that it paid "valuable consideration." It also appears undisputed that the covenant not to sue was not recorded by Benetton with the USPTO.[2] The question presented is whether the covenant not to sue is "void" as against V-Formation under the above quoted statutory provision because it was not recorded.

Benetton argues that the law is clear that the recordation provisions do not apply to a transfer of less than the full ownership interest in the patent, such as a license, citing to case law including *Cybernetic Services, Inc. v. Matsco, Inc.*, 252 F.3d 1039 (9th Cir. 2001), *cert. denied sub nom., Moldo v. Matsco, Inc.*, 534 U.S. 1130 (2002), which held that the phrase "assignment, grant or conveyance" as used in the statute refers only to transfers of ownership interests in a patent. *Id.* at 1049-1052. *See also Sanofi, S.A. v. Med-Tech Veterinarian Products, Inc.,* 565 F. Supp. 931, 939 (D.N.J.1983) ("although assignments are required to be recorded in order for an assignee to prevail against one who has acquired rights in the patent without notice . . . there is no obligation to record a license"). Because the covenant not to sue was a "mere license" and not a transfer of an ownership interest, recording under the statute

---

[2] The Court notes that recordation under 35 U.S.C. § 261, which provides constructive notice of a patent assignment is not the only method for providing constructive notice of assignments, and actual notice of a prior assignment may also cut off a subsequent assignee's rights. *See Katz v. Lear Siegler, Inc.,* 5 F.3d 1502 (Table), 1993 WL 262564 at **4 (Fed. Cir. 1993), *cert. denied*, 510 U.S. 1118 (1994). Constructive or "inquiry" notice, other than from recording, could be found from facts that the subsequent assignee had, at the time of purchase, a duty to, yet did not, inquire at all into such facts. For example, inquiry notice may be triggered when the prior assignee was making, using, or selling specimens of the invention covered by the patent involved, and the subsequent assignee is experienced in the business of acquisition and enforcement of patents and his purpose in acquiring the patents at issue was to enforce them against purported infringers by litigation or threat of litigation. *Id.*

was not required argues Benetton (Defendants' S.J. Mem. at 5-6).  Moreover, the

license having been given to Benetton by virtue of the covenant not to sue, V-

Formation as the subsequent purchaser of the patent would take subject to the

outstanding license.  *Sanofi, S.A.*, *supra,* 565 F. Supp. at 939.

    V-Formation concedes in its response that "normally covenants not to sue on

a patent are considered to be a bare license under the patent."  (Plaintiff's Response

at 9).  It is unclear whether V-Formation has abandoned the position taken by its

counsel in his letter of February 18, 2003 where he stated that "[t]here is a very

legitimate argument that a covenant not to sue is a *grant* because a covenant not to

sue is equivalent to a license" and that "a license is a *grant* and a covenant not to sue

is nothing more than a 'bare' license, but nonetheless, a license and a therefore a

*grant*."  Exhibit C to Defendants' Motion for Sanctions (emphasis in original).  In any

event, under the applicable law, treating the covenant not to sue as a "bare license"

takes the covenant outside the transactions within the statutory definition of

"assignment, grant or conveyance," and obviates the recording requirement under the

statute.

    Nonetheless, V-Formation appears to further argue that in the context of the

K-2/Benetton settlement agreement, the mutual covenants not to sue are not the

equivalent of a license because there is an internal inconsistency in the settlement

agreement as to whether a certain line of skates was covered by the patents (Plaintiff's

Response at 9).  V-Formation argues that therefore Benetton's covenant not to sue

should be characterized as an "equitable encumbrance" or an "equitable lien" on the

patents, rather than a license (*id.*).  Having made that argument, V-Formation relies on the decision in *Rhone-Poulenc Agro, S.A., v. DeKalb Genetics Corp.*, 284 F.3d 1323 (Fed. Cir. 2002), *cert. denied sub. nom.*, *Monsanto Co., v. Bayer CropScience, S.A.*, 539 U.S. 957 (2003), for the proposition that as a "bona fide purchaser" it should take free of "any competing equitable interest" even if recording of that interest is not required by the statute (Plaintiff's Brief at 10).

The Court does not agree that the doctrine of "bona fide purchaser" as urged by V-Formation precludes Benetton from asserting the covenant not to sue as a defense in this case.  First, plaintiff provides no authority for the proposition that a covenant not to sue should be viewed as an equitable encumbrance.  Second, the Court's understanding of the *Rhone-Poulenc* decision does not lead to a conclusion that it helps plaintiff in this case.

In *Rhone-Poulenc,* a defendant, Monsanto, sought to invoke what the court there described as the "bona fide purchaser defense" against a claim for patent infringement. Monsanto was a sublicensee from a party that had been found to have obtained its license by fraud, but Monsanto asserted that it had no knowledge of the fraud when it obtained the sub-license.  Describing the defense, the court stated that under some circumstances "the bona fide purchaser defense is governed by" the recordation statute, 35 U.S.C. § 261.  284 F.3d at 1327.  The court ultimately found that the statute did not apply in that case, in part because of the circumstances under which Monsanto acquired its sublicense, 284 F.3d at 1327, and in part because Monsanto did not acquire legal title to the patent, but at most was a licensee.  284 F.3d at 1329-31.

14

The Court nonetheless recognized that federal law governed the availability of such a defense in a patent case, and sought to articulate what it described as "a federal rule concerning the bona fide purchaser defense." 284 F.3d at 1328.  Citing to the general common law rule regarding bona fide purchasers in a non-patent context, the court stated that "[g]enerally, a bona fide purchaser is one who purchases legal title to property in good faith for valuable consideration, without notice of any other claim of interest in the property." *Id.* at 1329.  In further describing the rationale underlying the defense, the Federal Circuit stated that

> [t]he bona fide purchaser rule exists to protect innocent purchasers of property from competing equitable interests in the property because "[s]trong as a plaintiff's equity may be, it can in no case be stronger than that of a purchaser, who has put himself in peril by purchasing a title, and paying a valuable consideration, without notice of any defect in it, or adverse claim to it . . ." *Boone v. Chiles*, 35 U.S. 177, 210 (1836).  At common law, however, it was quite clear that one who did not acquire title to the property could not assert the protection of the bona fide purchaser rule.

284 F.3d at 1329.  Because Monsanto did not acquire title to the patent, the court found that the defense was not available to it.  *Id.* at 1329-31.

To be sure, in the instant case the plaintiff did acquire legal title to the patents. But unlike Monsanto, it is not seeking to use its alleged *bona fides* as a defense to a patent infringement claim, but rather offensively against Benetton.  In the situation where *Rhone-Poulenc* quotes from *Boone v. Chiles*, the referenced "innocent purchasers" were defendants who held legal title, being sued by a plaintiff who held an equitable interest, and the defendants were asserting the bona fide purchaser defense against the plaintiff's equitable claim.  That is not the case here.  Benetton is not

15

asserting a claim against V-Formation to which V-Formation offers a bona fide purchaser defense.  Rather, V-Formation is trying to undo Benetton's rights by asserting the bona fide purchaser doctrine based on its later agreement with K-2.  That is not the case contemplated by the decision in *Rhone-Poulenc.*[3]

In addition, even if the *Rhone-Poulenc* decision can be read to suggest that the bona fide purchaser doctrine can be more than a defense and that courts should consider the equities between an asserted bona fide purchaser of a patent and the holder of a conflicting, unrecorded non-ownership right in the patent, the Court in the instant case would find that the equities favor Benetton.  If plaintiff's position were correct, in the instant case where Benetton had acquired a covenant that protected it from suit but the statute did not provide for recording of that type of "bare license," Benetton would have no means to protect itself from suit by a later assignee who took without notice of the covenant.  That is, there is no mechanism for Benetton to put the later assignee on notice of its prior right.

Conversely, the later assignee of a patent can protect itself from prior unrecorded licenses either by performing due diligence of its assignor's records or by obtaining from its assignor a warranty that there are no prior competing interests in the patent, as V-Formation did in this case.  Moreover, upholding the covenant not to sue in this case does not deprive V-Formation of its ownership interest in the patents; it merely limits its right to sue one entity (Benetton) for infringement.  Given these

---

[3] The Court notes that in *Heidelberg Harris, Inc. v. Loebach*, 145 F.3d 1454 (Fed. Cir. 1998), a case cited by plaintiff for the proposition that "the bona fide purchaser for value rule applies to the purchase of a patent" (Plaintiff's Brief at 7), the party asserting the bona fide purchaser defense was the party being sued for patent infringement. 145 F.3d at 1457.

16

competing equitable interests, this Court would uphold the covenant not to sue over V-Formation's assertion of a "bona fide purchaser offense."

Accordingly, for the reasons set forth above, Defendants' Motion for Summary Judgment is GRANTED.

## V.   DEFENDANTS' MOTION FOR SANCTIONS AND PLAINTIFF'S RESPONSE

Defendants argue that because they held a covenant not to sue from plaintiff's assignor, K-2, the allegations of patent infringement in plaintiff's First Amended Complaint are not warranted by existing law, are not supported by a non-frivolous argument for extension of or modification of existing law and therefore they are entitled to sanctions under Rule 11, F.R.Civ.P. (Defendants' Motion for Sanctions at 4).

Plaintiff responds that it was unaware of the covenant not to sue until after it filed its original complaint, as the covenant not to sue was not known to it until it received counsel's letter of February 3, 2003 (Plaintiff's Response to Motion for Summary Junction and Sanctions at 13-14).[4]  Plaintiff also argues that even after being made aware of the covenant not to sue, its counsel came to the conclusion that there was a good faith basis to question whether the covenant was binding on the plaintiff, as it was a bona fide purchaser of the patent without notice of the covenant (*id.* at 14).  Plaintiff argues that this conclusion was based on the language of the settlement agreement, and the "state of recent law (albeit sparse) with regard to the federal common law of the

---

[4] Plaintiff's response to the motion for sanctions is contained in its brief filed April 28, 2003 (Dkt # 21), although the defendants' separate motion for sanctions was not filed until May 5, 2003 (Dkt. # 22).

right of a bona fide purchaser to defeat an encumbrance on conveyed patents of which he had no actual or constructive knowledge." *Id.* at 14.

As noted above the Court does not agree with either position advanced by plaintiff, although it does agree that the law on the subject was "sparse," at best. Nonetheless, the Court can not say that plaintiff's position was frivolous or groundless, given the argument fashioned upon the *Rhone-Poulenc* case.  Although "not a winner," plaintiff's position was barely (not "certainly") "good enough to avoid sanctions." *See* Letter of February 18, 2003 by V-Formation counsel, attached as Exhibit C to Defendant's Motion for Sanctions.  Accordingly, the Court DENIES Defendants' Motion for Sanctions.

**CONCLUSION**

For the reasons set forth above, the Defendants' Motion for Summary Judgment (Dkt. # 16) is GRANTED.

Defendants' Motion for Sanctions (Dkt. # 22) is DENIED.

Defendants' Motion for Summary Judgment of No Liability (Dkt. # 36) is DENIED as Moot.

Plaintiff's complaint is dismissed and the Clerk of the Court is directed to enter judgment for defendants and against plaintiff.

DATED: March 10, 2006

BY THE COURT:

*s/ Phillip S. Figa*

_____
Phillip S. Figa
United States District Judge